Per Curiam.
The bill states, that the complainants, Thomas H. and Nicholas, deceased, purchased divers tracts of land for the benefit of the said Nicholas and the other complainant, there being an agreement between them that each should have an equal proportion, and each should pay an equal part of the purchase money ; that amongst the lands so purchased, was a tract of 500 acres, being half of a tract of 1,000 acres patented by William Gillespie, and by him conveyed to John Donelson for his share for locating the I,000 acres ; and by the said Donelson, on the 15th of October, 1805, conveyed to the said William Perkins, by order of the said Thomas H. and Nicholas, deceased ; the other 500 acres, the balance of the I,000 acre tract, the said William Gillespie conveyed in fee to James McGavock; that the said Thomas H. and Nicholas, at the timé they purchased as above from John Donelson, gave him their bond for the purchase money, being $750, part of which has been paid; that some time after the said conveyances were made to the said James McGavock and William Perkins, and before the land was divided between them, it was discovered that a part thereof, to * wit, 200 acres, were covered by the elder and better title *217 of Daniel Perkins and Thomas Berry, and consequently that the said Donelson and Gillespie were liable to the amount Of the deficiency, to wit, the said Donelson to the complainants for KXTacres, part of the 500 conveyed to the said William, and the said Gillespie liable in like manner to the said McGavock. And in order that the said deficiency might as soon as possible be accounted for and' satisfied, it was agreed that the said William should convey to the said James McGavock the 400 acres which he was entitled to by virtue of the above conveyance from Gillespie, and also the 200 acres covered by the better claims of the said Daniel and Thomas Berry ; and that the said James McGavock, by himself or his agent, the defendant, David, should settle with said Donelson and Gillespie for the 200 acres deficient and covered as aforesaid ; and in pursuance of said agreement, said William did, on the 5th of October, 1810, convey 600 acres, and upon trust as to 100 acres covered as aforesaid that the said James and David would settle with the said John Donelson concerning the same, and pay to the said William the net amount of what the said Donelson should agree to pay for the said 100 acres. The bill further states, that the said James or David, by virtue of said agreement and the authority thereby created, did settle with the said John Donelson concerning the said 100 acres, and received from him the said bond given by the said. Nicholas and Thomas H. for the purchase money, which the said John assigned to the said James McGavock, and that the defendants refuse to discover and pay over to them such part of said bond as they are entitled to for the said 100 acres as aforesaid, but have commenced an action on the said bond so obtained from and assigned by the said Donelson, and prosecuted the same to judgment, and recovered thereon the sum of $648.41.
*The answer of David McGavock admits the purchase by his father, James,'from Gillespie, in 1795, of an undivided moiety of the 1,000 acres in the bill mentioned, and the purchase of the other moiety of said tract from John Donelson by said Thomas H. and Nicholas, and the giving of their bond for $750 for the purchase money. The answer further states, that previous to the year 1807, certain trespassers had settled on the said land, and cleared about 48 acres ; that in the beginning of that year they went away, and the complainant, William, by himself and his tenants, took possession of the same, and continued to occupy them during that year *218 and the years 1808, 1809, and 1810 ; and that in the latter part of this year á division took place between said William and James, when it was agreed that James should be entitled to one half the arrears of said rents, and said William conveyed 600 acres of said land, including the 200 acres covered by the elder claim, and that at the same time this defendant executed a promise in writing, that said William should be entitled to one half of what might be recovered from Donelson or Gillespie; that, upon application to Donelson, he admitted that in justice he was liable for the whole deficiency of the 200 acres, and offered the bond and what was due thereon by way of compromise. This offer was communicated to the said William, who refused the same and to accept of anything less than the then value of the lost land; upon which this defendant accepted said offer, and gave a covenant to indemnify both said Donelson and said Gillespie against all suits at law that might be brought against them on account of said 100 acres; and conceives that said William is bound by his election, and that he ought not to have more than what he could have recovered at law, -which this defendant conceives to be the price of the land when it was purchased, with the interest. The answer of James McGavock states, before the year 1801, when he came to this * State, he knows nothing of the transactions mentioned in the bill; that he was present at the division of the land in 1810, and heard the complainant, William, agree to be accountable for half the amount of the rent; that William, the following year, rented to him 15 acres of the said land at $2 per acre, which should be deducted out of the arrearages. It appears from the testimony in the cause that the cleared land in part was rented out by the complainant, William, and in part occupied by his tenants, but the particulars either as to time or quantity need not be at present noticed, being properly investigate before the clerk and master.
Upon the question whether this cause should be referred to the master for an account to be taken, and in case of a reference what should be submitted, it was argued by the defendant’s counsel that no account should be .taken as to him; for as between him and the complainant, he could not be considered as a trustee upon the bond upon which he brought suit at law, for although as agent for his' father, James McGavock, he had entered into an agreement with the complainant, William Perkins, to divide the land and to take *219 600 acres, including the 200, and to endeavor to settle the matter with Donelson, and pay Perkins for his 100 acres ; yet, that before he concluded the business with Donelson, the complainant, William, refused the terms offered; and that this defendant having, against the consent of the said William, settled the matter at his own will and risk, he thereby divested himself of the character of agent and trustee in the said business, as far as regards the said William; and that, having taken an assignment of the bond, the consideration of the compromise with Donelson, in his own name, he disaffirmed the interest of the said William therein, and considers himself a stranger t.o the equity of the bill. Further, that said William’s remedy is what he can recover at law, to which he admits he is responsible by his covenant to Donelson, * but cannot be called upon by this suit. The bill and answer show he is a trustee, and it is conceived he cannot divest himself of this character at pleasure, for were it otherwise, all trusts would be at an end. If a trustee could be permitted to say, Thus far, or so far I proceed in the transaction for my cestui que trust, and as to the remainder for myself, might he not shelter himself against any breach whatever, however flagrant or injurious to his cestui que trust ? But the rule is, that a trustee cannot act for himself; that whoever undertakes to act for another in any matter, shall not in the same matter act for himself. And it is no objection to the application of this rule, that the trustee or agent has made no advantage by such act, for equity disallows the measure upon'the general principle (Newland, 461; Sugden, 399), without reference either to advantage or unfairness. It is no answer to this by the defendant, that the complainant, William, refused the terms of the compromise communicated to him. The defendant was within the bounds of his agency; he had nQt exceeded them, and the com-' plainant was compellable to accede to them. It rather appears that the terms of compromise in this case were favorable, and the execution of the agency meritorious, and so ought to have been considered by Perkins, for more has by this means been obtained than what perhaps would have been received at law. In this view of the case the defendant, David McGavock, must account for one half of the bond mentioned, being the whole that was received. The remaining question on this part of the case is as to the rents, whether they ought to be taken into the account. By *220 the complainant it is contended they cannot, for, say they, the rents accrued either before or after the death of James McGavock. If before, they were personalty, and belong to the executors; if after, they belong to the heirs or devisees, or to whoever is the owner of the land. For as the defendant, David, in the present suit, sustains neither of these characters, * they cannot be taken into the account as proper items to charge the complainants. These positions are unquestionably true in the general ; but in the present case are conceived not to apply. When these rents accrued, it was in the power of James McGavock to make any appropriation or disposition of them he thought proper. He might, for instance, upon the division of the land, direct them to be received by his agent, the defendant, David. And the assumpsit of William Perkins to him for this purpose, being an authorized agent, would be such an undertaking as could be enforced by action at law. In this state of things, had David McGavock the power to make any disposition of the sum he might think proper ? He certainly had such power. He might have .directed the application of them as a discount for so much. out of the moneys to be returned by him upon a settlement with Donelson for the best lands, and which William Perkins, at the same time, by contract authorized him to receive. In the answer, it is stated that William agreed to be accountable for one half of the arrearages of the rent; and it may be fairly inferred from the whole of the case, that this was to be by a discount out of the funds of William when received. This construction naturally arises out of the relative situation of all the parties, violates no rule of law, does justice between them, and makes a final end of the matter. This court, therefore, is of opinion that the rents are properly receivable into the account to be taken before the master.
See King’s Digest, 3079, 11,708.